IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
SEPTEMBER 13, 2007 Session

## TABATHA PAMPERIN v. STREAMLINE MFG., INC., ET AL.

**Direct Appeal from the Circuit Court for Rutherford County**
**No. 48242     Robert E. Corlew, Judge**

---

**No. M2007-00256-COA-R3-CV - Filed March 17, 2008**

---

This appeal involves an attempt to pierce a corporate veil. The plaintiff purchased a hot tub from a corporation, paying $3,000 by check and agreeing to finance the balance of $1,178. Unbeknownst to the plaintiff, the two sole shareholders of the corporation had been deadlocked and involved in litigation for almost two years. After the corporation accepted the plaintiff's $3,000 check, but before it delivered the hot tub, the litigation ended. A jury determined that one of the shareholders held a perfected security interest in practically all of the corporation's assets, and the judge entered an order recognizing that shareholder's right to foreclose on the collateral if necessary. Both shareholders filed post-trial motions, then submitted a proposed "agreed amended final order" that was approved by the trial judge. The agreed order provided that, "in lieu of foreclosure," the secured party-shareholder would be awarded all the assets of the corporation outright. The corporation was left with no assets and ceased to operate. The plaintiff never received her hot tub or a refund of the $3,000 she paid to the corporation. Plaintiff filed the present lawsuit seeking a judgment against the corporation and against the two shareholders individually. The trial court entered a total judgment against the corporation of $17,663.52, which included treble damages and attorney's fees pursuant to the Tennessee Consumer Protection Act. However, the court refused to pierce the corporate veil to impose liability on the individual shareholders. The plaintiff appeals. We affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, P.J., W.S. delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Frank M. Fly, Murfreesboro, TN, for Appellant

G. Kline Preston, IV, Nashville, TN, for Appellee, Robert Moore

Virgil Holt, Paducah, KY, *pro se*

### I.  FACTS & PROCEDURAL HISTORY

Streamline Manufacturing, Inc. ("Streamline") was a corporation chartered for profit under the laws of Tennessee on March 13, 1991. Streamline manufactured and sold hot tubs in Smyrna, Tennessee. Defendants Robert Moore and Virgil Holt were each fifty percent shareholders of Streamline. Mr. Moore was president of the corporation, and Mr. Holt was vice president, secretary, and treasurer of the corporation. Streamline borrowed money from First Tennessee Bank in order to purchase real estate for $548,000, and it borrowed additional money to purchase manufacturing equipment. Mr. Holt personally guaranteed the notes. Streamline executed a deed of trust for the real property, and First Tennessee Bank perfected a security interest in Streamline's real and personal property.

Streamline operated successfully until 2000, when Mr. Moore and Mr. Holt became deadlocked and were unable to reach agreements or make decisions on behalf of the corporation. Mr. Moore filed a shareholder derivative action against Mr. Holt in the chancery court of Rutherford County, Tennessee, which was styled ***Robert D. Moore, ex rel. Streamline Manufacturing, Inc. v. Virgil Holt, individually and as Director of Streamline Manufacturing Inc., et al***.[1] The chancery court appointed a receiver for the corporation, and Streamline continued to conduct business during the litigation. However, Streamline did not hold shareholder meetings, directors' meetings, or officer elections during the litigation because of Mr. Holt and Mr. Moore's disagreements.

The court temporarily enjoined Mr. Holt from participating in the day-to-day business of Streamline, leaving Mr. Moore in control of the business. The court later entered an order restoring Mr. Holt's right to participate in Streamline's business operations, but apparently Mr. Holt did not assert his right to participate in the business during the litigation, other than approving any expenditures made on behalf of Streamline. Mr. Holt did not receive a salary from Streamline during the litigation.

At some point during the shareholder litigation, Mr. Holt borrowed money in his individual capacity in order to purchase Streamline's notes from First Tennessee Bank. Mr. Holt later testified that he purchased the notes for "something like $840,000 or $850,000," and he explained that he purchased the notes "to keep this thing from going into bankruptcy or foreclosure." Streamline then made payments on the notes directly to Mr. Holt. At least one of the checks Streamline sent to Mr. Holt was returned for insufficient funds.[2]

On February 10, 2002, Ms. Tabatha Pamperin went to Streamline's business location and executed a spa purchase agreement to have a hot tub built according to her specifications. The

---

[1] Only a few orders from the suit are included in the record before us.

[2] Another $100,000 loan was obtained for "operating capital" from First National Bank. Mr. Holt testified, "I had borrowed that just prior to this litigation starting," but it is not clear whether he borrowed the money on behalf of Streamline or in his individual capacity. The record does not reflect whether First National Bank also held a security interest in any of Streamline's assets. Mr. Holt only specifically refers to purchasing the notes held by First Tennessee, and he does not mention whether he also purchased the First National Bank note.

specific color of acrylic that Ms. Pamperin wanted was not in stock, and she was told by a Streamline employee that her hot tub would be ready in about two weeks. Ms. Pamperin agreed to pay a $3,000 deposit and finance the balance of $1,178. On February 23, 2002, Ms. Pamperin wrote a check to Streamline for $3,000, which was deposited into Streamline's bank account.

Around the end of February, a jury returned a verdict in the shareholder derivative action involving Mr. Moore and Mr. Holt. On March 20, 2002, the chancery court held a hearing to address, among other things, a "request that a final order be entered based upon the factual findings of the jury." The court entered a final order on April 8, 2002, which provided, in part:

> 2. Based upon the decision of the jury, all encumbrances and impediments previously ordered by the Court prohibiting Virgil Holt from exercising his rights of foreclosure or his right for peaceful possession of the real property and personal property owned by Streamline Manufacturing, Incorporated are removed. Virgil Holt may foreclose on the real property in accordance with the terms and conditions of the deed of trust and other statutory laws. Virgil Holt may take peaceful possession of all personal property under the security agreements with respect to personal property owned by Streamline Manufacturing, Inc.
>
> 3. In the event Mr. Holt exercises his rights of foreclosure and peaceful possession of all personal property, accounts, inventory, equipment and all other items in which he has a security interest, then it is proper for Mr. Holt to have possession of these items. Priority of any security interests in the personal property shall be determined by the security instruments.
>
> . . .
>
> 5. The Court allowed the jury to make certain factual findings with respect to the issues of dissolution. The jury found that grounds for dissolution exist. The Court directs that Streamline Manufacturing, Incorporated shall be dissolved. The Court further directs that the dissolution of Streamline Manufacturing, Incorporated shall not be effective until June 20, 2002.
>
> . . .
>
> 7. Mr. Holt is entitled to take possession of all bank accounts of Streamline Manufacturing, Incorporated in light of his having a security interest in those bank accounts under the security agreements.
>
> . . .
>
> 10. Should any vendors have perfected security interests in inventory or supplies sold to Streamline, then the competing security interests are to be addressed by receiver John Kea and appropriate provisions made for those competing security interests. Otherwise, all inventory and equipment shall remain at Streamline.

Following the entry of the order, Mr. Holt filed a motion to amend, and Mr. Moore filed various post-trial motions including a motion for new trial.

When Ms. Pamperin did not receive her hot tub in a timely manner, she went to Streamline's manufacturing facility and spoke with two Streamline employees, who told her that the business was closed and she would not be receiving her hot tub. In May of 2002, she returned to Streamline's business location and, for the first time, met Mr. Holt. Mr. Holt also informed Ms. Pamperin that a hot tub would not be built for her, nor would she receive a refund of her $3,000 deposit.

The post-trial motions of Mr. Holt and Mr. Moore were apparently never heard, and the parties submitted a proposed "Agreed Amended Final Order" that was approved and entered by the court on July 1, 2002, providing as follows:

> . . . By the signatures of counsel below, the parties have notified the court that they have settled all pending motions and all other matters in dispute and are submitting this order to give effect to those terms of their agreement that are appropriately included in an order of the court.
>
> It is, therefore, ORDERED as follows:
>
> 1. The final order entered on April 8, 2002 is altered and amended as necessary for its terms to be consistent with the terms of this order. The following provisions and terms shall replace any contrary provisions of the April 8, 2002 final order:
>
> (a) In lieu of foreclosure, defendant Virgil Holt is vested with unencumbered ownership of all of the real and personal property of Streamline Manufacturing, Inc. ("Streamline"), which secures promissory notes originally payable to First Tennessee Bank and now held by Mr. Holt, which real and personal property is more particularly described in Exhibit 1 to this order. Pursuant to Rule 70, Tennessee Rules of Civil Procedure, this court divests Streamline of title to all property described on the attached Exhibit 1 and vests title to all such property in Virgil Holt free and clear of all liens and encumbrances. With the transfer of the ownership of that property to Mr. Holt pursuant to this order, Streamline is relieved of further obligation under any of the secured notes. . . .
>
> (b) The court finds that the remaining funds on deposit with the Clerk and Master in connection with this action are the property of Mr. Moore. After payment from those funds of all sums required by the prior orders of this court to be paid to the Special Master, the Receiver for Streamline, and the Clerk and Master, the Clerk and Master is directed to disburse immediately all remaining funds to Robert D. Moore as reimbursement for attorneys' fees and costs

incurred in connection with the prosecution of a shareholder derivative action for the benefit of Streamline. . . .

(c) Pursuant to Rule 70, Tennessee Rules of Civil Procedure, this court divests Mr. Moore of title to all shares of Streamline stock previously owned by Mr. Moore and vests title to those shares of stock in Streamline. Upon entry of this order, all of Mr. Moore's shares shall be deemed to have been redeemed by Streamline, and Mr. Holt shall become the owner of all of Streamline's remaining issued and outstanding shares. . . .

(d) The provisions of the April 8, 2002 final order requiring the dissolution of Streamline effective June 20, 2002 are vacated and set aside. As the owner of 100% of Streamline's shares, Mr. Holt may decide whether or not to proceed with dissolution of the corporation. Mr. Holt may not, however, conduct business through Streamline or using [sic] the Streamline name.

(e) All other terms of the April 8, 2002 final order and the other prior orders of this court remain unchanged, except as previously modified by other orders of this court.

Mr. Holt took possession of all Streamline's assets, including the real and personal property. He transferred the real property to ABC Space Rentals, Inc., another corporation wholly owned by Mr. Holt and his son, for no consideration. ABC Space Rentals then sold the same real property within six months to another individual for $1,080,000. Mr. Holt used the proceeds of the real property sale to pay off the personal loan he had obtained to purchase the notes from First Tennessee, and he testified that Streamline's equipment, building, and land were all paid off as well. Mr. Holt then used the machinery, equipment, inventory, and other personal property assets that had belonged to Streamline to start his new business, Four Winds Manufacturing, LLC. Four Winds Manufacturing also manufactured and sold hot tubs, including the exact model that Ms. Pamperin had purchased from Streamline. Streamline was administratively dissolved by the Tennessee Secretary of State on September 10, 2002, for failure to file annual reports, but Mr. Holt did not take any action to wind up Streamline's business affairs or notify creditors.[3] Mr. Holt paid some of Streamline's debts that were owed to vendors he wished to continue doing business with through Four Winds Manufacturing. It appears that three vendors initiated involuntary Chapter 7 bankruptcy proceedings against Streamline, but according to Mr. Holt, he "made a deal to keep it from going in." However, he acknowledged that there were "several sales such as Ms. Pamperin's out there," and those individuals never received their hot tubs.

Ms. Pamperin filed suit against Streamline, Mr. Holt, and Mr. Moore in general sessions court in Rutherford County. The general sessions court entered a judgment in favor of Ms. Pamperin

---

[3] "A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under § 48-24-105 and notify claimants under §§ 48-24-106 and 48-24-107." Tenn. Code Ann. § 48-24-203(c) (2002).

for $3,000 against Streamline, but it dismissed the claims against Mr. Moore and Mr. Holt, individually.

Ms. Pamperin then appealed to the circuit court in Rutherford County, alleging various claims against Streamline, Mr. Moore, Mr. Holt, and Four Winds Manufacturing, LLC, Mr. Holt's new hot tub manufacturing business. Ms. Pamperin set forth ten causes of action in her complaint, including, relevant to this appeal, breach of contract and violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*, and she sought to "pierce the corporate veil" to hold Mr. Moore and Mr. Holt individually liable for all her damages as shareholders of Streamline.

A bench trial was held on December 21, 2006, before Chancellor Robert E. Corlew, III. Ms. Pamperin testified about executing the spa purchase agreement and paying $3,000 to Streamline, and she discussed her later meeting with Mr. Holt when he told her that she would not receive a hot tub or a refund of her deposit. Mr. Moore and Mr. Holt both testified about their involvement with Streamline and the shareholder litigation. At the conclusion of Ms. Pamperin's proof, Mr. Holt and Mr. Moore moved for involuntary dismissal of the claims against them in their individual capacity as shareholders. The court granted the motions to dismiss, finding that there was insufficient evidence presented to support piercing the corporate veil of Streamline in order to impose liability on the shareholders. However, the court awarded a total judgment in favor of Ms. Pamperin against Streamline, the defunct corporation, in the amount of $17,663.52, which included treble damages and $8,663.52 in attorney's fees pursuant to the Tennessee Consumer Protection Act. Ms. Pamperin filed a timely notice of appeal to this Court.

## II. ISSUES PRESENTED

On appeal, Ms. Pamperin presents a single issue for review: should the corporate veil be pierced under the facts of this case? Both Mr. Moore and Mr. Holt have filed briefs on appeal, but Streamline is not represented. No one has appealed the entry of the $17,663.52 judgment against Streamline. We are simply asked to determine whether Ms. Pamperin demonstrated that Streamline's corporate veil should be pierced to hold Mr. Moore and/or Mr. Holt individually liable. Mr. Moore seeks an award of attorney's fees on appeal, contending that Ms. Pamperin's claims are frivolous.

For the following reasons, we reverse the decision of the circuit court and remand for further proceedings. In addition, we decline to award attorney's fees to the appellee.

## III. STANDARD OF REVIEW

A motion for involuntary dismissal challenges the sufficiency of the plaintiff's proof. ***Burton v. Warren Farmers Co-op.***, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002). "When a motion to dismiss is made at the close of a plaintiff's proof in a non-jury case, the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the

-6-

evidence has been presented." ***Building Materials Corp. v. Britt***, 211 S.W.3d 706, 711 (Tenn. 2007). If the plaintiff's case has not been established by a preponderance of the evidence, then the case should be dismissed if the plaintiff has shown no right to relief on the facts found and the applicable law. ***Id.***

We review a trial court's decision to grant a Rule 41.02 involuntary dismissal pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure. ***Building Materials Corp.***, 211 S.W.3d at 711. We review the case *de novo* upon the record with a presumption of correctness of the trial court's findings of fact. We will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2007); ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Watson v. Watson***, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. DISCUSSION

"Under Tennessee corporation law, a corporation and its shareholders are distinct entities." ***Cambio Health Solutions, LLC v. Reardon***, 213 S.W.3d 785, 790 (Tenn. 2006). By statute, a corporation is empowered "as an individual to do all things necessary or convenient to carry out its business and affairs," such as make contracts, incur liabilities, borrow money, and grant security interests in all or part of its property. Tenn. Code Ann. § 48-13-102 (2002). "A shareholder of a corporation is not personally liable for the acts or debts of the corporation except that the shareholder may become personally liable by reason of the shareholder's own acts or conduct." Tenn. Code Ann. § 48-16-203(b) (2002).

The separate legal status given to a corporation "protects its shareholders from direct responsibility for the corporation's debts and other liabilities, except in rare circumstances when a plaintiff is successful in persuading a court to disregard the separate corporate entity, also referred to as 'piercing the corporate veil.'" ***Cambio Health Solutions***, 213 S.W.3d at 790. In other words, the corporation is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors, but the corporate entity may be disregarded upon the showing of special circumstances, such as that the corporation is a sham or dummy so that failure to disregard it would result in an injustice. ***Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.***, 691 S.W.2d 522, 526 (Tenn. 1985); ***Oceanics Schools, Inc. v. Barbour***, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003). "In an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock will be treated as identical." ***Muroll Gesellschaft M.B.H. v. Tennessee Tape, Inc.***, 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995) (citing *E.O. Bailey & Co. v. Union Planters Title Guaranty Co.*, 33 Tenn. App. 439, 232 S.W.2d 309

(1950)). A corporate veil may be pierced, that is, the legal entity disregarded and the true owners of the entity held liable, when the corporation is liable for a debt but is without funds due to some misconduct on the part of the officers and directors. *Id.* (citing *Anderson v. Durbin*, 740 S.W.2d 417, 418 (Tenn. Ct. App. 1987)).

Piercing the corporate veil is an equitable doctrine applied in extreme circumstances to prevent the use of a corporate entity to defraud or perform illegal acts. *Nepp v. Hart*, No. M2005-2024-COA-R3-CV, 2006 WL 2582503, at *7 (Tenn. Ct. App. W.S. Sept. 7, 2006); *Canter v. Ebersole*, No. E2005-02388-COA-R3-CV, 2006 WL 1627288, at *1 (Tenn. Ct. App. May 13, 2006). A corporation's separate identity should be disregarded "with great caution and not precipitately." *Oceanics Schools*, 112 S.W.3d at 135 (quoting *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)). The conditions under which the corporate entity will be disregarded vary according to the special circumstances of each case, and the matter is particularly within the province of the trial court. *Electric Power Bd. of Chattanooga*, 691 S.W.2d at 526. The determination of whether a corporation is a mere instrumentality of an individual is ordinarily a fact question for the jury. *Id.* "The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief." *Oceanics Schools*, 112 S.W.3d at 135 (citing *Schlater*, 833 S.W.2d at 925).

When piercing the corporate veil, a court may disregard the corporate entity in order to impose liability against a related entity, such as a parent corporation or a controlling shareholder, where the two entities are in fact identical or indistinguishable and where necessary to accomplish justice. *Manufacturers Consol. Serv., Inc. v. Rodell*, 42 S.W.3d 846, 866 (Tenn. Ct. App. 2000). When a subsidiary corporation is used as a mere instrumentality of a parent corporation, our Supreme Court has held that the corporate veil of the subsidiary may be pierced to reach the parent if three elements are present:

> (1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.
> (2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Continental Bankers Life Ins. Co. of the South v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979). Some courts have also required these three elements in actions to impose individual liability on a shareholder of a corporation who is in reality the corporation's "alter ego." *See, e.g.*, *Island Brook Homeowners Ass'n, Inc. v. Aughenbaugh*, No. M2006-02317-COA-R3-CV, 2007 WL 2917781, at *6 (Tenn. Ct. App. E.S. Oct. 5, 2007); *Tennessee Racquetball Investors, Ltd. v. Bell*,

709 S.W.2d 617, 622 (Tenn. Ct. App. 1986); *but see **Schlater v. Haynie***, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991) (stating that *Continental Bankers* addressed parent/subsidiary relationships and was therefore inapplicable to the case before it involving a corporation/stockholder relationship).

The most common factors used by Tennessee courts to determine whether to pierce the corporate veil were originally set forth in ***Federal Deposit Ins. Corp. v. Allen***, 584 F.Supp. 386, 397 (E.D. Tenn. 1984), as follows:

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

***Id.*** (citing cases from various jurisdictions). Generally, no one factor is conclusive in determining whether to pierce the corporate veil; rather, courts will rely upon a combination of factors in deciding the issue. ***Oceanics Schools***, 112 S.W.3d at 140. "Even though corporate formalities have been observed, one may still challenge the corporate entity by showing that he has been the victim of some basically unfair device by which the corporate form of business organization has been used to achieve an inequitable result." ***Schlater***, 833 S.W.2d at 925.

Ms. Pamperin has relied upon several of these factors in contending that Streamline's corporate veil should be pierced to hold Mr. Holt and Mr. Moore individually liable for Streamline's debt. First, she claims that the corporate entity was used to work an injustice in contravention of public policy. Ms. Pamperin points to the fact that the "agreed amended final order" entered in chancery court vested sole ownership of all of Streamline's stock and all its assets in Mr. Holt. She claims that Streamline's corporate structure was used as an "instrumentality or business conduit" for Mr. Holt and his later business, Four Winds Manufacturing, LLC, to the detriment of Streamline's creditors. According to Ms. Pamperin, these actions constituted a failure to maintain arms length relationships.

In dismissing the claims against Mr. Moore and Mr. Holt, and thereby refusing to pierce the corporate veil, the trial court made the following findings:

> From the evidence presented, the court finds that the individual defendants, Virgil Holt and Robert Moore, each anticipated and expected Streamline Manufacturing, Inc. to survive the shareholder lawsuit initiated between them as the shareholders of Streamline filed in the Chancery Court for Rutherford County, Tennessee. Under the circumstances that existed between Mr. Moore and Mr. Holt, the failure to conduct corporate meetings did not result in Streamline failing to be a valid corporation. The evidence established that the corporation and its principals maintained a separate identity for the corporation.
>
> The court further finds that there were no actions on the part of Virgil Holt or Robert Moore that would allow the court to pierce the corporate veil or award a judgment against these defendants individually. The court further finds that there was no evidence to establish that Virgil Holt or Robert Moore violated any provisions of the Tennessee Consumer Protection Act and did not engage in any unfair or deceptive acts toward plaintiff, Tabatha Pamperin. The court stated that the closest issue which the court considered in this case was the distribution of corporate assets. *The court finds that the proof in this case establishes that the assets of the corporation were distributed to pay valid debts and expenses of the corporation and to satisfy perfected security interests and mortgages held by Virgil Holt.* Therefore, the court grants the motions of Virgil Holt, individually, and Robert Moore, individually, to dismiss the claims against them.

(emphasis added).

We find no misconduct on the part of Mr. Moore that would justify holding him individually liable for the debts of Streamline. He was one of two shareholders, and in control of Streamline during the litigation, but a receiver was appointed to oversee Streamline's financial affairs, and Mr. Holt also approved all expenditures. There is no general rule that stockholders, directors or officers of a corporation are liable for its debts merely because they controlled or dominated the corporation. *Schlater*, 833 S.W.2d at 924. The owners of a corporation have a right to control it so long as they do not use the control to defraud creditors. *Id.* at 926. In other words, there must be a further demonstration of the "[u]se of control to commit fraud or wrong, to perpetrate the violation of a statutory or other positive duty, or a dishonest and unjust act in contravention of third parties' rights." *Newman*, 787 S.W.2d at 931. Mr. Moore was removed as director and officer of Streamline by the chancery court's first final order, and the amended order divested him of title to any shares of Streamline stock. According to the amended order, the only assets or funds received by Mr. Moore were "reimbursement for attorneys' fees and costs incurred in connection with the

prosecution of a shareholder derivative action for the benefit of Streamline." We therefore affirm the trial court's decision to dismiss all claims against Mr. Moore in his individual capacity as a shareholder of Streamline.

With regard to Mr. Holt, however, we find that Ms. Pamperin demonstrated that this is an appropriate case in which to pierce the corporate veil, in furtherance of the ends of justice. From our review of the record, the evidence does not support a finding that all of the assets of the corporation were distributed to Mr. Holt in order to satisfy security interests and mortgages that he had assumed. It is clear that many of the assets that were distributed to Mr. Holt were used for his own personal benefit, to the detriment of Streamline and its creditors.

The problem in this case arises from the final disposition of the original shareholder litigation. As previously discussed, a jury determined that Mr. Holt held a valid perfected security interest in all the real and personal property belonging to Streamline, including the equipment, inventory, and other assets. Streamline's notes were originally payable to First Tennessee Bank but were subsequently obtained by Mr. Holt. Although the security agreements are not in the record before us, the parties do not dispute that Mr. Holt held such an interest. The chancery court's original final order properly recognized Mr. Holt's right to take peaceful possession of those items and foreclose on the collateral pursuant to the security agreements and deed of trust "and other statutory laws." The problem arises because of the "agreed amended final order" that the parties submitted to "settle" their pending motions and disputes. The agreed order divested Streamline of title to all its property and assets and vested title to the property in Mr. Holt because of his status as a secured creditor, with no requirement that he foreclose on the collateral or proceed in accordance with applicable law. Article 9 of the Uniform Commercial Code and Tennessee Code Annotated section 47-9-610, *et seq.*, set forth specific duties of secured parties when a debtor defaults with regard to achieving a "commercially reasonable disposition" of collateral. ***AmSouth Bank v. Trailer Source, Inc.***, 206 S.W.3d 425, 431 (Tenn. Ct. App. 2006). For instance, after applying the cash proceeds to certain obligations, the secured party must "account to and pay a debtor for any surplus." Tenn. Code Ann. § 47-9-608(a)(4) (2001).[4] Similarly, following foreclosure of a deed of trust, "[a] creditor is entitled only to the balance owed to him out of the proceeds of the foreclosure sale; any surplus goes to the debtor." ***Fossett v. Gray*** 173 S.W.3d 742, 749-50 (Tenn. Ct. App. 2004). The rationale for such procedures and protections has been explained as follows:

> [B]oth seller and purchaser are recognized as having interests in the property contemplated, and by them provision is made for the full protection and enforcement of their respective rights. The seller is interested to the extent of his unpaid debt against the property, and what is left after the payment of that debt belongs to the purchaser. The seller is not allowed to regain the property for which he has

---

[4] Although the security agreements in this case are not in the record before us, the provisions of Tennessee Code Annotated section 47-9-608 cannot be waived or varied "to the extent that they require accounting for or payment of surplus proceeds of collateral." Tenn. Code Ann. § 47-9-602(5) (2001).

> received a part of the price, and, without more, hold it as his own, in disregard of the purchaser's interest, as the defendant in the case at bar attempted to do; but, having regained the property, he must [dispose of] it as provided in . . . the act, and, after retaining the sum sufficient to pay the balance due him on the price, and the expenses of the sale, pay the surplus, if any, to the original purchaser.

*AmSouth*, 206 S.W.3d at 431 (quoting *Cowan v. Singer Mfg. Co.*, 92 Tenn. 376, 21 S.W. 663, 665 (1893)). Here, pursuant to the agreed order, Mr. Holt simply took title to all Streamline's assets that were listed as collateral securing Streamline's original obligation. Mr. Holt testified that Streamline owed approximately $800,000 on the First Tennessee Bank notes, and that the "net check" he received from selling the real property alone was between $960,000 and $980,000. The total value of the collateral is indiscernible because all the assets were simply awarded to Mr. Holt; however, it is clear that some collateral remained after the secured obligations formerly payable to First Tennessee Bank were satisfied. Rather than returning any surplus to Streamline, Mr. Holt personally retained all the personal property that belonged to Streamline and used it to open up a new business for his own personal gain.[5] He specifically admitted to moving "all the inventory and machinery and equipment from Streamline to [his] new location that [he] began operating as Four Winds Manufacturing." Mr. Holt claims in his brief that these were his "personal assets" pursuant to the agreed order, but there is nothing in the record to demonstrate that he was entitled to ownership of all Streamline's assets.[6] If the remaining assets, or the value of the collateral that exceeded the amount of Streamline's original obligation, had been returned to Streamline, Ms. Pamperin might have enforced her contract claim and judgment against those assets in Streamline's hands. Instead, Streamline was rendered insolvent and Mr. Holt did nothing to protect Streamline's interest as a debtor. Streamline was forced to forfeit its right to the surplus, and Mr. Holt, Streamline's sole shareholder and officer, took advantage of the situation and acted in his own interest to the detriment of Streamline.

We believe these facts indicate that Mr. Holt used his dominance and control, as the sole remaining shareholder and officer of Streamline, to abuse the corporate form and defraud others,

---

[5] There is nothing in the record to suggest that Mr. Holt proposed to accept all the collateral in full satisfaction of the secured obligation, or that Streamline consented to such acceptance under the process set forth in Tennessee Code Annotated section 47-9-620. The provisions of section 47-9-620 cannot be waived or varied by agreement of the debtor. Tenn. Code Ann. § 47-9-602(10). Furthermore, under the facts of this case, we question whether Mr. Holt could have proposed such acceptance and also consented on behalf of Streamline (waiving its right to any surplus) in good faith. In exercising his rights on default, a secured party is bound by the good faith requirement applicable throughout the Uniform Commercial Code. *American City Bank of Tullahoma v. Western Auto Supply Co.*, 631 S.W.2d 410, 420 (Tenn. Ct. App. 1981); *see also* Tenn. Code Ann. § 47-9-620, cmt. 11.

[6] Mr. Holt also argues that Ms. Pamperin should have "joined in the chancery court [shareholder derivative] lawsuit and done more sooner to recover" and protect her interests. We find no merit whatsoever in this assertion. Ms. Pamperin never had knowledge of the shareholder litigation prior to purchasing the hot tub, and Mr. Holt never took any action to wind up the corporation's affairs or provide the required notice to creditors or others with claims against Streamline. Ms. Pamperin acted promptly in filing this case to protect her interests.

including Ms. Pamperin. The value of the property that was transferred to Mr. Holt clearly exceeded the lien debt thereon so that an equity interest should have been available to subject to the payment of legitimate claims, such as that of Ms. Pamperin. Because Streamline's assets were diverted to Mr. Holt's own personal use, Streamline became unable to fulfill its existing obligations to creditors and others. It would be unjust, in our opinion, to allow Mr. Holt to hide behind an insolvent and defunct corporation when he assumed title to all the corporation's assets in contravention of third parties' rights.

In sum, Ms. Pamperin presented sufficient proof demonstrating that in order to accomplish justice, under the unique facts of this case, it is necessary to pierce the corporate veil of Streamline in order to reach Mr. Holt. Therefore, the trial court erred in granting Mr. Holt's motion for involuntary dismissal at the close of Ms. Pamperin's proof. On remand, however, Mr. Holt should be afforded an opportunity to present his own proof regarding this issue. After his evidence has been presented, the trial court should re-weigh all the evidence and make a final decision on whether the corporate veil should be pierced to reach Mr. Holt.

### B. *Attorney's fees on Appeal*

Mr. Moore requested his attorney's fees on appeal, claiming that Ms. Pamperin's allegations were frivolous. In this case, we find it equitable to decline to award attorney's fees on appeal.

### V. CONCLUSION

For the aforementioned reasons, we affirm the trial court's decision to dismiss the claims against Robert Moore. We reverse the trial court's decision to dismiss the claims against Virgil Holt and remand for further proceedings consistent with this opinion. We decline to award attorney's fees to Mr. Moore. Costs of this appeal are taxed to appellee, Virgil Holt, for which execution may issue if necessary.

 

 

_____
ALAN E. HIGHERS, P. J., W.S.