IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2019 Session

### CYNTHIA UNDERWOOD, ET AL. V. MARGARET MILLER d/b/a NASHVILLE DESIGN CENTER, LLC

**Appeal from the Circuit Court for Williamson County**
**No. 2015-441      James G. Martin, III, Judge**

_____

### No. M2019-00269-COA-R3-CV

_____

This is an action to pierce the corporate veil. In a previous action in which the limited liability company was the only defendant, the plaintiffs received a default judgment for breach of contract in the amount of $709,500. The same plaintiffs subsequently filed this action against the sole member of the now-defunct limited liability company to pierce the corporate veil and hold the defendant personally liable for the unsatisfied judgment. Following discovery, the parties filed cross-motions for summary judgment. The trial court ruled in favor of the defendant, determining that the undisputed facts weighed against piercing the corporate veil, and the plaintiffs appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD R. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Jeffrey Spark, Nashville, Tennessee, for the appellants, Cynthia Underwood and Theresa Stamps.

Craig V. Gabbert, Jr. and Brian F. Irving, Nashville, Tennessee, for the appellee, Margaret Miller d/b/a Nashville Design Center, LLC.

### OPINION

On March 6, 2006, Cynthia Underwood and Theresa Stamps ("Plaintiffs") filed a complaint against Margaret Miller in Davidson County Circuit Court alleging that she breached her contract to employ Plaintiffs and pay the debts of a previous interior design business Plaintiffs owned. On November 3, 2006, Ms. Miller filed a motion to dismiss the lawsuit on the grounds that she was not a proper party because she was not a party to the contract at issue. She contended that the only parties to the contract were Plaintiffs

and Nashville Design Center, LLC ("NDC") of which she was the sole member. She also alleged she was protected from liability for any obligation of NDC because it was a limited liability company.

Shortly thereafter, Plaintiffs voluntarily dismissed Ms. Miller from the lawsuit without prejudice and filed an amended complaint asserting similar claims for breach of contract against NDC as the sole defendant. NDC filed an answer and counterclaim alleging that Plaintiffs committed fraud by misrepresenting the amount of debt owed by NDC to vendors and designers.

In August 2007, the case against NDC was removed to the United States Bankruptcy Court for the Middle District of Tennessee as related to the pending bankruptcy case of Ms. Underwood. A year later, on September 29, 2008, the Bankruptcy Court entered a default judgment against NDC awarding Plaintiffs $709,500 in damages (the "Bankruptcy Court Judgment"). Plaintiffs domesticated the judgment in the Davidson County Circuit Court.

On September 18, 2015, Plaintiffs commenced this action against Ms. Miller ("Defendant") seeking to satisfy the Bankruptcy Court Judgment by piercing the corporate veil of NDC to hold Defendant personally liable. Defendant filed an answer, claiming NDC was a separate legal entity from Defendant, and she was not liable for the debts of NDC.

On October 30, 2017, following extensive discovery, Plaintiffs filed a motion for summary judgment. The undisputed facts Plaintiffs relied on in support of their motion arose from the bankruptcy action, specifically the allegations in their amended complaint and the factual findings in the Bankruptcy Court's Judgment.[1] Based on these facts, Plaintiffs contended that Defendant's "sole control over NDC allowed Defendant to hide behind the LLC in order to breach her contract with Plaintiffs, convert their property and otherwise commit wrongs against them. . . ." Further, Plaintiffs argued that three factors established that NDC was Defendant's alter ego and thus weighed in favor of piercing the

---

[1] In the Bankruptcy Court adversary proceeding, Plaintiffs alleged in the complaint and stated in their statement of undisputed facts that, *inter alia*, Plaintiffs established a partnership in 2000 called Nashville Designer's Resource, a retail business offering interior design services and, in November 2003, Defendant and Plaintiffs entered into an oral contract to operate a design business. Plaintiffs stated, per the agreement, Plaintiffs would manage the business for $30,000 a year and 40% of the profits and Defendant would satisfy all debts of Nashville Designer's Resource. Thereafter, Defendant created Nashville Designer's Resource, LLC of which Defendant was the sole member, and in April 2004, Plaintiffs and Defendant opened the showroom to the public. Approximately four months later, Defendant sent Plaintiffs a letter terminating their employment with the company and changed its name to Nashville Design Center, LLC ("NDC") and, among numerous other alleged breaches of their contract, failed to pay the debts of Nashville Designer's Resource.

corporate veil: (1) Defendant was the sole member and had sole control of NDC; (2) NDC was grossly undercapitalized as evidenced by Defendant's failure to set aside enough money to satisfy the debts of Plaintiffs' previous design business; and (3) Defendant failed to deposit the auction proceeds into NDC's bank account and diverted the money for her personal use. In so doing, Defendant used NDC as an instrumentality or business conduit for herself.

Defendant filed a response in opposition to Plaintiffs' motion for summary judgment, and thereafter, on February 1, 2018, Defendant filed a cross-motion for summary judgment. In her response and cross-motion for summary judgment, Defendant disputed the factual findings in the Bankruptcy Court Judgment and allegations in the amended complaint. She argued that because she was not a party to the Bankruptcy Court action, she never admitted those facts as true. Nevertheless, Defendant argued that even if these facts were undisputed, she was entitled to summary judgment, because the undisputed facts showed that NDC was a separate legal entity from Defendant and not Defendant's alter ego. In making this argument, Defendant relied on the following undisputed facts:

> (1) NDC obtained two lines of credit to provide the business with sufficient operating capital, one from Prime Trust Bank and the other from SunTrust Bank, and Defendant personally guaranteed these loans, which amounted to more than one million dollars;
> (2) All company transactions were conducted from NDC's separate business accounts;
> (3) NDC hired its own employees and paid each of its employees a salary and benefits from NDC's business accounts; and
> (4) NDC operated out of a showroom, and paid rent from NDC's business accounts.

Defendant conceded that she deposited the auction proceeds from the sale of NDC's assets into her personal account instead of NDC's business account. She contended, however, that this was proper because NDC owed her more than $200,000, and as a creditor of NDC, she was entitled to the auction proceeds to partially satisfy NDC's debt to her.

In Plaintiffs' response to the cross-motion, they did not dispute the foregoing facts, but argued the facts were irrelevant "except to demonstrate that NDC operated as a business, which Plaintiffs have never denied." Plaintiffs claimed the fact that Defendant deposited the proceeds from the auction into her personal account showed that Defendant used NDC as an "instrumentality or business conduit" for Defendant. Plaintiffs further argued that "[i]n creating the LLC just before breaching her contract with Plaintiffs, [Defendant] clearly used the LLC to transfer her personal liability under the contract formed in November of 2003 and reaffirmed after the creation of [NDC] to protect

herself from the consequences of her breaching that contract in August of 2004." Accordingly, Plaintiffs argued that this warranted piercing the corporate veil.

After a hearing on December 7, 2018, the court determined that NDC was an independent and separate legal entity from Defendant based on the following undisputed facts:

> (1) Defendant personally guaranteed loans to NDC from SunTrust Bank and Prime Trust Bank for more than one million dollars to provide sufficient operating capital;
> (2) NDC hired its own employees and paid those employees from NDC's bank accounts;
> (3) NDC leased its own showroom using funds from NDC's bank accounts;
> (4) NDC conducted "thousands" of transactions using its separate business accounts; and
> (5) NDC owed Defendant more than $200,000 at the time of the auction, and as a creditor of NDC, Defendant was entitled to the auction proceeds to satisfy NDC's debt to her.

The court also found that Plaintiffs failed to present any evidence showing Defendant used the corporate form to commit fraud. Thus, the court ruled that the undisputed material facts did not provide a sufficient basis for piercing the corporate veil and summarily dismissed Plaintiffs' action.

Plaintiffs appealed.

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving

party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

## ANALYSIS

The dispositive issue on appeal is whether the trial court erred in granting Defendant's motion for summary judgment and denying Plaintiffs' motion.[2]

"A corporation is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors." *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003). In this way, the corporate form acts as a veil or shield, protecting its shareholder from personal liability for the debts of the corporation. *See id.* "In appropriate circumstances, however, the corporate veil may be pierced and the acts of a corporation attributed to a shareholder." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 214 (Tenn. 2012). In order to pierce the corporate veil, the party seeking to do so must establish that "the separate corporate entity 'is a sham or a dummy' or that disregarding the separate corporate entity is 'necessary to accomplish justice.'" *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88 (Tenn. 2010) (quoting *Barbour*, 112 S.W.3d at 140); *Rogers*, 367 S.W.3d at 215. "Despite the inapplicability of the remedy's name, the 'corporate veil' of a Tennessee limited liability company may also be pierced, [using] the same standards." *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 829 (Tenn. Ct. App. 2012) (quoting *In re Steffner*, 479 B.R. 746, 755 (Bkrtcy. E.D. Tenn. 2012)).

To determine whether piercing the corporate veil is appropriate, Tennessee courts apply the factors articulated in *Federal Deposit Insurance Corporation v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984), also known as the *Allen* factors. *Rogers*, 367 S.W.3d at 215. In *Allen*, the court stated:

---

[2] Both parties made arguments regarding whether this court should accept the factual findings in the Bankruptcy Court Judgment and the allegations in Plaintiffs' amended complaint in the bankruptcy action as undisputed; however, we do not need to address that issue because we have determined that Plaintiffs' "undisputed facts" are immaterial, as we explain in the ensuing analysis.

Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Allen*, 584 F. Supp. at 397. No single factor is dispositive, nor is it necessary that all factors support piercing the corporate veil. *Roger*s, 367 S.W.3d at 215. However, "the equities must '**substantially favor**' the party requesting relief, and the presumption of the corporation's separate identity should be set aside only 'with great caution and not precipitately.'" *Id*. (citations omitted) (emphasis added).

Additionally, even if a plaintiff presents evidence sufficient to pierce the corporate veil under the *Allen* factors, Tennessee law also requires a showing of fraud or injustice. *Southeast Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 673 (6th Cir. 2006) (quoting *IBC Mfg. Co. v. Velsicol Chem. Corp.*, No. 97–5340, 187 F.3d 635, 1999 WL 486615 (6th Cir. July 1, 1999) ("Tennessee law still requires an element of fraud in order to pierce a corporate veil.").

The parties agree that two factors are inapplicable: factor three, "non-issuance of stock certificates," and factor eleven, "the failure to maintain arms length relationships among related entities." *Allen*, 584 F. Supp. at 397. Accordingly, we will consider the other nine factors and whether Plaintiffs' undisputed facts established that Defendant used the corporate form to commit fraud or to cause an injustice.

## A. THE ALLEN FACTORS

### 1. Failure to Collect Paid-in Capital

Plaintiffs claim the first enumerated *Allen* factor—"whether there was a failure to collect paid in capital"—weighed in their favor because it was undisputed that Defendant failed to deposit the auction proceeds from the sale of NDC's assets into NDC's business

account. *See id*. But as Defendant correctly asserts, paid-in capital is "[t]he money paid for the capital stock of a corporation." Black's Law Dictionary (10th ed. 2014).

The trial court held that according to NDC's 2008 financial statement, the auction proceeds were accounted for as income, and Plaintiffs proffered no authority suggesting that auction proceeds are paid-in capital and not income to the business. Accordingly, the trial court correctly held that "the auction proceeds were income to NDC. As such, NDC did not fail to collect paid-in capital." Therefore, this factor does not favor Plaintiffs.

2. Grossly Undercapitalized

Plaintiffs argued that NDC was grossly undercapitalized as evidenced by NDC's inability to pay the debts incurred by Nashville Designer's Resource, which NDC acquired from Plaintiffs and agreed to assume as part of its obligation under NDC's contract with Plaintiffs.[3] Plaintiffs supported their contention with the finding of the Bankruptcy Court that NDC failed to pay Plaintiffs' business debt totaling $146,193.79.

A corporation's "legitimacy is suspect" if, from the time of its formation, the "corporation [was] unable to pay its costs of doing business because of grossly inadequate capitalization." 18 Am. Jur. 2d *Corporations* § 56. Thus, gross undercapitalization means that, at its inception, the corporation did not have enough capital to operate. *See id.*

Plaintiffs, however, do not dispute Defendant's factual assertion that in NDC's first year of business, NDC obtained a line of credit from Prime Trust Bank in the amount of $364,000. Nor do Plaintiffs dispute Defendant's factual assertion that NDC subsequently obtained a line of credit from SunTrust Bank, and for four years, both banks made loans to NDC on an as-needed basis amounting to more than one million dollars.

The undisputed facts show that NDC had sufficient capital to operate, irrespective of whether it paid Plaintiffs' debts as agreed. *See Canter v. Ebersole*, No. E2005-02388-COA-R3-CV, 2006 WL 1627288, at *3 (Tenn. Ct. App. May 13, 2006) (determining that the business was adequately capitalized through a bank loan). As the trial court correctly held:

---

[3] Plaintiffs also argue that by firing Plaintiffs, NDC was undercapitalized in terms of "human capital" because, without Plaintiffs, Defendant did not know how to operate a design business. However, Plaintiffs do not cite to any authority which provides that this court should consider "human capital" under this factor, and we are not aware of any. Therefore, we will not consider it.

Here, NDC operated independently from April 2004 to February 2008. . . . Ms. Miller personally guaranteed the company's lines of credit and loaned the company her own money. Over the lifespan of the company, it had lines of credit totaling more than one million dollars. As such, the Court finds no evidence that NDC was undercapitalized.

(Footnote omitted). Therefore, this factor does not favor Plaintiffs.

### 3. Non-issuance of Stock Certificates

The parties agree that the third factor is inapplicable.

### 4. Sole Ownership by One Individual

It is undisputed that Defendant was the sole member/owner of NDC. "However, it is not uncommon for a corporation [or company] to be owned by one individual, and this fact standing alone does not weigh heavily either way on the question of whether the corporate veil should be pierced." *F&M Mktg. Servs., Inc. v. Christenberry Trucking & Farm, Inc.*, 523 S.W.3d 663, 669 (Tenn. Ct. App. 2017); *see Rogers*, 367 S.W.3d at 216 (quoting *Hadden v. City of Gatlinburg*, 746 S.W.2d 687, 689 (Tenn. 1988)) ("[A]lthough 'the sole ownership of stock by one individual' is one of the factors that should be considered in granting the relief she requests, it is not solely determinative. Even if one stockholder holds all of the stock in a corporation, the corporation and that single stockholder remain 'distinct legal entities.'"). Thus, this factor, standing alone, does not favor Plaintiffs. Nevertheless, we will consider it in conjunction with the other applicable factors.

### 5. Same Office or Business Location

As the trial court correctly found, Plaintiffs identified no evidence to dispute the fact that NDC leased its own showroom using funds from the company's bank accounts. Accordingly, this factor does not favor Plaintiffs.

### 6. Employment of Same Employees

It is undisputed that NDC hired its own employees and paid its employees' salaries and health insurance premiums from NDC's business accounts. Furthermore, Plaintiffs identified no evidence to dispute the fact that no NDC employees were under Defendant's personal employ. Therefore, this factor does not favor Plaintiffs.

### 7. Use of the Entity as an Instrumentality or Business Conduit for an Individual

It is undisputed that Defendant deposited the net proceeds of $114,617.56 from the auction into Defendant's personal banking account, and as the trial court correctly found, "[t]his is the only transaction Plaintiffs offer to show that NDC was used as an instrumentality of [Defendant]." It is also undisputed that NDC was in business for four years, was involved in thousands of business transactions, and all of NDC's business and financial transactions, including its lines of credit, were in the company's name. Therefore, we agree with the trial court that Defendant did not use NDC as an instrumentality or business conduit for herself. Accordingly, this factor does not favor Plaintiffs.

8. Diversion of Assets by or to an LLC Member to the Detriment of Creditors

Based on the foregoing transaction, Plaintiffs also contend Defendant diverted corporate assets to the detriment of Plaintiffs, who were NDC's creditors. Defendant admits depositing NDC's auction proceeds in the amount of $114,617.56 into her personal account but contends doing so was not improper because she was a significant creditor of NDC. Defendant submitted business records showing that NDC owed her more than $200,000 at the time of the auction in April of 2008. NDC's business records also showed that as of December 31, 2007, NDC's total long-term liabilities amounted to $1,229,544.12, including a personal loan Defendant made to NDC in the amount of $204,353.10, an IT credit line in the amount of $29,728.65, and a SunTrust Bank loan for $995,462.37 that Defendant personally guaranteed.[4]

Plaintiffs' contention that this factor weighs against Defendant is based on our ruling in *Pamperin v. Streamline Manufacturing, Inc.*, 276 S.W.3d 428 (Tenn. Ct. App. 2008). In that case, we found the evidence weighed in favor of piercing the corporate veil when the owner of the corporation paid himself out of the corporation's proceeds to satisfy the corporation's debt to him before satisfying the corporation's debt to the plaintiff. *Id*. at 441. While *Pamperin* is instructive, it does not support Plaintiff's assertions, because the facts in these two cases are easily distinguished.

In *Pamperin*, one of the owners of Streamline Manufacturing ("Streamline"), purchased Streamline's promissory notes from First Tennessee Bank. *Id*. at 432. When Streamline dissolved, the owner liquidated Streamline's assets to satisfy the notes and

---

[4] While Plaintiffs disputed the authenticity of NDC's 2008 business records showing the same liabilities, which the trial court admitted over Plaintiffs' motion to exclude, Plaintiffs never disputed the authenticity of the 2007 business records or the information contained therein. Thus, Plaintiffs did not dispute that Defendant was a creditor of NDC and that NDC owed Defendant more than the amount realized at the auction. Moreover, Plaintiffs filed a motion to exclude the 2008 business records, arguing they were not properly authenticated; however, the trial court denied Plaintiffs' motion, and Plaintiffs do not take issue with this ruling on appeal.

then retained the surplus for his personal benefit. *Id*. at 434–35. We determined that the owner violated the public policy of this state, which provides that a secured creditor must "account to and pay a debtor for any surplus." *Id*. at 440 (quoting Tenn. Code Ann. § 47-9-608(a)(4)). We found:

> The value of the property that was transferred to [the owner] clearly exceeded the lien debt thereon so that an equity interest should have been available to subject to the payment of legitimate claims, such as that of [the plaintiff]. Because Streamline's assets were diverted to [the owner's] own personal use, Streamline became unable to fulfill its existing obligations to creditors and others. It would be unjust, in our opinion, to allow [the owner] to hide behind an insolvent and defunct corporation when he assumed title to all the corporation's assets in contravention of third parties' rights.

*Id*. at 441.

What warranted piercing the corporate veil in *Pamperin* was not that the corporation first satisfied its debt to the owner above all other creditors, but that the owner retained the surplus in contravention of the public policy of this state and the rights of other creditors. *Id*. Here, Defendant did not retain any surplus, and Plaintiffs do not cite to any authority supporting the proposition that Defendant violated the public policy of this state. Moreover, unlike *Pamperin*, Defendant was paid less than what NDC owed her. As the trial court noted: "(1) [Defendant] had advanced $300,000 to NDC before the auction proceeds were realized and was owed more than $200,000 at the time of the auction; and (2) NDC still owed $995,462.37 to SunTrust for a loan that was personally guaranteed by [Defendant]." Therefore, this factor does not favor Plaintiffs.

### 9. Use of the LLC as a Subterfuge in Illegal Transactions

Plaintiffs argued that "[t]o the extent that the breach of contract was illegal, if not criminally then civilly, the use by [Defendant] of NDC was a subterfuge with respect to its contract with Plaintiffs." But Plaintiffs cited no authority to support the contention that a breach of contract is illegal in the context of this *Allen* factor, and we are not aware of any. Therefore, this factor does not favor Plaintiffs.

### 10. Use of the LLC to Transfer Existing Liability of Another

In their motion for summary judgment, Plaintiffs initially contended this factor was irrelevant and made no argument that this factor favored piercing the corporate veil. Months later, in response to Defendant's cross-motion for summary judgment, Plaintiffs argued that the undisputed facts established that Defendant contracted with Plaintiffs to invest in their design business, and thereafter, Defendant formed NDC to transfer her personal liability under her contract with Plaintiffs to NDC. Plaintiffs referenced the

allegations in the amended complaint they filed in the Bankruptcy Court action, which they asserted the court must accept as undisputed.

Significantly, Plaintiffs do not dispute the fact that Defendant personally guaranteed a loan to NDC from SunTrust Bank for over $995,000. In light of this undisputed fact, Plaintiffs' assertion that Defendant formed NDC with the purpose of transferring, and thus avoiding existing individual liabilities is unsupported by any competent evidence and is without merit. Therefore, this factor, like all others, does not favor Plaintiffs.[5]

## B.  FRAUD OR INJUSTICE

Not only have Plaintiffs failed to establish a single *Allen* factor that favors them, they also failed to identify any evidence to support a finding that the breach of contract at issue here was fraudulent. Plaintiffs' fraud or injustice claim is premised on the contention that NDC breached its contract with Plaintiffs. However, as the trial court noted, citing *Southeast Texas Inns, Inc.*, 462 F.3d at 673, "[t]he law requires that fraud or injustice be found in the defendants' use of the corporate form," which is not the type of "injustice" or harm that typically flows from a mere breach of contract. Moreover, Plaintiffs' argument that Defendant committed fraud by failing to defend NDC in the bankruptcy action is without merit for several reasons including the obvious fact that Defendant was not a party in the bankruptcy action.

Therefore, we affirm the trial court's decision to deny Plaintiffs' motion for summary judgment and to grant Defendant's motion to summarily dismiss Plaintiffs' action to pierce the corporate veil.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Cynthia Underwood and Theresa Stamps.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[5] The parties agree that factor eleven, "the failure to maintain arms length relationships among related entities," is inapplicable. *Allen*, 584 F. Supp. at 397.