# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 13, 2016 Session

## F&M MARKETING SERVICES, INC. v. CHRISTENBERRY TRUCKING AND FARM, INC. ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 182985-2     Clarence E. Pridemore, Jr., Chancellor**

---

### No. E2016-00205-COA-R3-CV-FILED-JANUARY 31, 2017

---

The question presented is whether the corporate veil of Christenberry Trucking and Farm, Inc. (CTF), should be pierced and its sole shareholder, Clayton V. Christenberry, Jr., be held personally liable for a debt owed by CTF to F&M Marketing Services, Inc. In 2012, F&M obtained a judgment against CTF for breach of contract. By that time, CTF, a trucking company, had suffered mortal setbacks primarily owing to the great recession. CTF was administratively dissolved that same year. CTF had no assets to satisfy the judgment. F&M brought this action, seeking to hold Mr. Christenberry personally liable for the debt. After a bench trial, the court held that F&M did not meet its burden of proving that CTF's corporate veil should be pierced. F&M appeals. We affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and BRANDON O. GIBSON, JJ., joined.

Christopher J. Oldham, Knoxville, Tennessee, for the appellant, F&M Marketing Services, Inc.

John T. McArthur, Melanie E. Davis, and Carlos A. Yunsan, Maryville, Tennessee, for the appellees, Christenberry Trucking and Farm, Inc., and Clayton V. Christenberry, Jr.

**OPINION**

**I.**

This is the second appeal of this action to pierce the corporate veil. On the first appeal, this Court found "the trial court's findings of fact and conclusions of law insufficient to facilitate appellate review," vacated the judgment of the trial court, and remanded for sufficient findings of fact and conclusions of law. *F&M Marketing Servs., Inc. v. Christenberry Trucking and Farm, Inc.*, No. E2015-00266-COA-R3-CV, 2015 WL 6122872, at *1 (Tenn. Ct. App., filed Oct. 19, 2015). Our earlier opinion provides the following brief factual and procedural background:

> [T]he trial court entered a written order on February 13, 2012 awarding F & M a judgment totaling $375,524.29 plus post-judgment interest. The trial court entered its final judgment on February 13, 2012.
>
> At the time the trial court entered judgment, [CTF] had no assets to satisfy the judgment. After learning this, F & M commenced an action on May 25, 2012 seeking to disregard the corporate entity of [CTF] and hold its primary shareholder, Clayton Christenberry, Jr., personally liable for the judgment against the corporation.
>
> *     *     *
>
> On February 4, 5, and 6, 2015, the trial court conducted a trial on F & M's action to pierce the corporate veil of [CTF]. At the conclusion of the trial, the trial court orally ruled from the bench, concluding that F & M had not carried its burden to prove that the corporate veil should be pierced. . . . Accordingly, the trial court dismissed the entirety of F & M's claims against all of the defendants. F & M filed a timely notice of appeal.

*Id.* at *1, *2. In the first appeal, we concluded:

> Here, the eleven factors in [*FDIC v.*] *Allen*[, 584 F.Supp. 386 (E.D. Tenn. 1984)] require a fact-intensive inquiry for each individual case; the necessity for sufficient findings of fact and conclusions of law cannot be overstated in cases where a

2

party seeks to pierce the corporate veil, as it "depends on the specific facts and circumstances of the case."

* * *

Respectfully, the trial court's failure to render specific findings concerning the factors, and even more importantly, the trial court's failure to render legal conclusions as to any of the factors, warrant a vacatur of the final judgment. Under these circumstances, the appropriate remedy is to vacate the judgment and remand to the trial court for the entry of an order compliant with Rule 52.01.

*Id.* at *6.

Following remand, the trial court entered an order containing factual findings in support of its conclusion that the proof was insufficient to warrant piercing the corporate veil of CTF and imposing personal liability on its shareholder. F&M has again appealed this decision.

## II.

The issue presented is whether the trial court erred in holding that F&M did not meet its burden of proof to demonstrate that the corporate veil of CTF should be pierced.

## III.

Our standard of review is as follows:

Where, as here, the trial court sits without a jury, we review findings of facts de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). Questions of law . . . are reviewed de novo with no presumption of correctness. *Adoption of A.M.H.*, 215 S.W.3d at 809; *Kirkpatrick v. O'Neal*, 197 S.W.3d 674, 678 (Tenn. 2006).

***Christenberry Trucking & Farm, Inc. v. F&M Marketing Servs., Inc.***, 329 S.W.3d 452, 457 (Tenn. Ct. App. 2010),[1] quoting ***In re Angela E.***, 303 S.W.3d 240, 246-47 (Tenn. 2010).

**IV.**

We set forth the applicable legal principles governing the question of whether CTF's corporate veil should be pierced as taken from the first "piercing of the corporate veil appeal" opinion:

> [F]rom our review of recent piercing the corporate veil cases, Tennessee cases nearly uniformly consider the ***Allen*** factors in determining this issue. *See* ***Rogers v. Louisville Land Co.***, 367 S.W.3d 196 (Tenn. 2012); ***Dog House Investments, LLC v. Teal Properties, Inc.,*** 448 S.W.3d 905, 918 (Tenn. Ct. App. 2014), *perm. app. denied* (Tenn. July 11, 2014); ***Rock Ivy Holding, LLC v. RC Props., LLC***, 464 S.W.3d 623, 647 (Tenn. Ct. App. 2014), *appeal denied* (June 20, 2014); ***Edmunds*** [***v. Delta Partners, LLC***] 403 S.W.3d [812,] 830 [Tenn. Ct. App. 2012]. . . .
>
> The Tennessee Supreme Court clearly outlined the appropriate test to utilize—the ***Allen*** factors—in considering a challenge to the corporate veil in ***Rogers v. Louisville Land Co.***, 367 S.W.3d 196 (Tenn. 2012). . . .
>
> In ***Rogers***, the Tennessee Supreme Court specifically stated that the factors promulgated by ***Allen*** "are applicable" when determining whether the corporate veil should be pierced. Our research reveals no Tennessee case after . . . ***Rogers*** in which the ***Allen*** factors have not been applied to reach a conclusion on whether piercing the corporate veil is warranted. According to ***Rogers***:
>
> > Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public

---

[1] In the cited opinion involving the underlying breach of contract action filed by F&M against CTF, we held that F&M's lack of a broker's license did not preclude it from obtaining a judgment against CTF for breach of contract.

policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Id.* at 215 (citing ***Allen***, 584 F.Supp. at 397). Generally, no one factor is conclusive in determining whether to pierce the corporate veil; rather, courts will rely upon a combination of factors in deciding the issue. *Id.* (citing ***Barbour***, 112 S.W.3d at 140).

***F&M Marketing Servs., Inc. v. Christenberry Trucking and Farm, Inc.***, 2015 WL 6122872, at *5 (footnotes omitted).

"Ordinarily, a shareholder of a corporation is not personally liable for the acts of the corporation." ***Rogers***, 367 S.W.3d at 214. As the Supreme Court observed in its seminal ***Rogers*** opinion,

The party seeking to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to relief. In order to pierce the corporate veil, the proof must show that the separate corporate entity is a sham or a dummy or that disregarding the separate corporate entity is necessary to accomplish justice. The question of whether the corporation's separate identity should be disregarded is

5

dependent on the specific circumstances of the case and is a matter particularly within the province of the trial court.

*Id.* at 215 (internal citations, quotation marks, and ellipses omitted). The **Rogers** Court further stated that "in all events, the equities must substantially favor the party requesting relief, and the presumption of the corporation's separate identity should be set aside only with great caution and not precipitately." **Id.** (internal citations and quotation marks omitted).

With these principles in mind, we review the trial court's findings of fact and conclusions of law in its final judgment.[2] The trial court found as follows in pertinent part:

> CTF was a Tennessee for profit corporation having been incorporated in 1989 with Mr. Clayton Christenberry . . . being the sole stockholder of the corporation.
>
> F&M and CTF entered into a commission agreement for the haulage of freight in 2004, which ultimately led to a judgment against CTF in favor of F&M in the amount of $375,524.29 in 2012.
>
> Testimony at trial showed capital of $136,000.00 was paid into the corporation. Throughout the existence of the corporation, from the year 1993 until 2007, the corporation listed retained earnings on its[] books in excess of $500,000.00 and in excess of $1,000,000.00 in nine of these years. Records were not available to show the amount of retained earnings for the year 1999.
>
> Testimony presented at trial showed that during the time of CTF's operation, the corporation, at times, had yearly revenue in excess of $12,000,000.00. The company, at times, had approximately 120-150 employees and operated as many as

---

[2] F&M argues that the trial court again made insufficient findings of fact in its order, arguing that "they are once again nothing more than facts prepared by the Defendant's counsel." We do not agree. There is nothing in the order, or any statement made by the trial court, to indicate that it did not review the evidence and exercise its independent judgment in preparing the final judgment after our remand. Generally speaking, "a judicial officer is presumed to do his duty. Certainly the Appellate Court will not presume that the trial judge failed to do his duty in the absence of a showing to the contrary." *Tiffany v. Shipley*, 161 S.W.2d 373, 376 (Tenn. Ct. App. 1941).

120 tractors and 150 trailers along with as many as 3 truck terminals. Testimony at trial also showed that CTF had an independent Certified Public Accountant and an independent General Manager.

* * *

Testimony at trial showed business for CTF began to decline in 2007-2008 due to the bankruptcy and eventual loss of several customers. Corporate minutes for the year 2008 show Mr. Christenberry's annual salary as President of CTF being reduced to $99,520.00. Corporate minutes for the year 2009 show Mr. Christenberry's salary as president of CTF being further reduced to $8,900.00.

Testimony presented at trial showed the business of CTF continued to decline between 2009 and 2011, which ultimately resulted in the ceasing of operations and the beginning of the dissolution of CTF.

Testimony presented at trial showed that the corporation maintained appropriate financial records, as reflected in the exhibits and maintained them for more than three (3) years as required by the Internal Revenue Service.

In an effort to save [CTF] from financial collapse, Mr. Christenberry pledged personal real estate as collateral for corporate debt. He also borrowed money to pay off deficiencies arising from the forced sale of tractors and trailers representing secured collateral on First National Bank's corporate loans. In addition to the efforts made by Mr. Christenberry, the corporation underwent several work force reductions and the cutting of salaries and benefits. Despite such efforts, the corporation continued its downward spiral.

CTF remained an ongoing concern until July 11, 2012, when the company attempted to submit Articles of Termination to the Tennessee Secretary of State, which were rejected due to the inability of CTF to obtain tax clearance from the

7

Tennessee Department of Revenue.  The corporation was later administratively dissolved.

The trial court reviewed each of the eleven *Allen* factors in light of the proof presented at the bench trial.  It concluded that "only two of the eleven factors weigh ever so slightly in favor of piercing the corporate veil" of CTF.  It also determined that "[a]fter a review of the record as a whole and the evidence presented at trial, . . . CTF was not used to work a fraud or injustice in contravention [of] public policy."

The first and second *Allen* factors involve the capitalization of the corporation.  It was undisputed that CTF was started with paid-in capital in the amount of $136,000.  The trial court further found that "the corporation kept retained earnings for the years 1993 through 2007 with the exception of missing records for the year 1999."  Attorney David Buuck, who advised Mr. Christenberry about incorporating CTF and prepared its charter, and who prepared minutes for CTF's annual corporate meetings, testified in this regard that "Mr. Christenberry rolled every dime of profit over the years into retained earnings, did not pay himself any dividends from the profits of the corporation."  He said that CTF retained substantial earnings every year until 2008, when the consequences of the economic downturn became severe.  Mr. Christenberry provided undisputed proof that he tapped his personal assets in an effort to keep the corporation afloat and sufficiently capitalized during the hard economic times.  Based on our review of the record, the trial court's finding that "no evidence was presented that showed that the corporation was undercapitalized" is supported by the preponderance of the evidence.

F&M argues that CTF was undercapitalized beginning in the late 2000s.  But by then, it was suffering the economic effects of, among other things, spiking fuel prices, increased cost of sales, and the bankruptcy of two of its largest customers – Allied Bendix and General Motors.  Everyone who testified was in general agreement that these economic conditions, generally described as the great recession, contributed to CTF's downfall.  By 2010, CTF's tax return reflected zero assets.  Mr. Christenberry submitted signed articles of dissolution to the Secretary of State on August 15, 2011.  The corporation was essentially finished and bankrupt before February 13, 2012, the date on which the judgment for breach of contract in favor of F&M was entered.

Regarding the third factor, it is not disputed that CTF issued stock certificates.  As already noted, Mr. Christenberry is the sole stockholder of CTF.  However, it is not uncommon for a corporation to be owned by one individual, and this fact standing alone does not weigh heavily either way on the question of whether the corporate veil should be pierced.  In *Edmunds v. Delta Partners, Inc.*, 403 S.W.3d 812 (Tenn. Ct. App. 2012), another case involving a corporation with a single shareholder, we stated:

8

> [C]ourts in Tennessee are cautioned that the doctrine of piercing the corporate veil should be applied only in "extreme circumstances to prevent the use of a corporate entity to defraud or perform illegal acts." ***Pamperin v. Streamline Mfg., Inc.***, 276 S.W.3d 428, 437 (Tenn. Ct. App. 2008)[.]
>
> *        *        *
>
> Mr. Edmunds first argues that the proof at trial showed that Mr. Garrison exercised complete dominion and control over Delta during the years at issue in this case. Indeed, Mr. Garrison admitted that Delta was "essentially" him from 2006 until the time of trial. We agree that the evidence in this case shows that Delta had "no separate mind, will or existence" apart from Mr. Garrison during the years at issue. ***Pamperin***, 276 S.W.3d at 438 (quoting ***Continental Bankers***, 578 S.W.2d at 632). However, the fact that a shareholder exercises complete dominion and control over a corporation alone is insufficient to justify piercing the corporate veil; the party seeking to pierce the corporate veil must also prove that "[s]uch control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights."

*Id.* at 829, 830-31 (internal citations omitted). In this case, the evidence regarding Mr. Christenberry's level of "dominion and control" over CTF was not as strong as in ***Edmunds***. He certainly made decisions regarding the corporation and controlled it, but also testified that he relied on the advice of his attorney and certified public accountant. In any event, there is no evidence that CTF was used to defraud, or perform illegal, dishonest, or unjust acts.

Regarding the fifth ***Allen*** factor, the trial court found that "CTF had an office location that was leased from Mr. Christenberry," and stated that "this fact weighs in favor of CTF in not allowing the piercing of the corporate veil." We find that the leasing of CTF's office does not have any particular pertinence to the question of the piercing of the veil in this case. F&M does not point to any impropriety or illegality of the lease arrangement.

Regarding the sixth ***Allen*** factor, the trial court stated:

9

The sixth factor this Court must consider is employment of the same employees or attorneys. Evidence presented at trial showed that some employees of CTF at times performed work on the personal farm of Mr. Christenberry, and the corporate attorney, Mr. David Buuck, was also the Christenberry family attorney at times. The Court finds these facts weigh[] in favor of Plaintiff, if ever so slightly.

F&M presented the testimony of Joyce Price, a bookkeeper formerly employed by CTF between 1994 and 2003. She stated that she had been required to keep the books of Mr. Christenberry personally, as well as other of his business entities. She also testified that certain CTF employees also did work at the Christenberry farm at times. Jeanette Aytes, another bookkeeper formerly employed by CTF, testified similarly. At trial, CTF assailed the credibility of Ms. Price by pointing out that she had been convicted of the felony of embezzling nearly two hundred thousand dollars from CTF. On cross-examination of Ms. Aytes, she admitted that she had filed a complaint with the Equal Employment Opportunity Commission and a lawsuit against CTF, after she was laid off in 2008. The trial court did not make specific findings of credibility of any witness. We agree with the trial court that this factor weighs in favor of piercing the corporate veil, for to the extent that CTF employees and other resources were used for the benefit of Mr. Christenberry personally or for his other business interests, this was an improper use of CTF. The trial court found that these same facts were pertinent to the other *Allen* factor that weighed against CTF and Mr. Christenberry. This is the eleventh factor, an examination of whether the corporation failed to maintain arms-length relationships among related entities.

The analysis of *Allen* factors number (7) – "the use of the corporation as an instrumentality or business conduit for an individual or another corporation," (9) – "the use of the corporation as a subterfuge in illegal transactions," and (10) – "the formation and use of the corporation to transfer to it the existing liability of another person or entity," require only brief discussion. The trial court found no evidence of any of these factors, and concluded therefore that these factors weighed against piercing the corporate veil. The evidence does not preponderate against these conclusions.

Regarding factor eight, the trial court found as follows:

The eighth factor this Court must consider is whether corporate assets were diverted by or to a stockholder or other entity to the detriment of creditors or the manipulation of assets and liabilities in another. Plaintiff's counsel has

10

attempted to make an issue of the payments to Ms. [Judith]³ Christenberry, as a W-2 employee of CTF between the years 1995 and 2000, as well as the subsequent payments that were made after 2000. Testimony was that the payments made after 2000 were reflected as alimony paid from Mr. Christenberry's salary and personal resources, which were duly noted upon the company books. This Court finds the payments made to Ms. [Judith] Christenberry as a W-2 employee was in no way an attempt to divert corporate assets to the detriment of a creditor, especially considering that Ms. [Judith] Christenberry ceased being a W-2 employee in 2000, which was four years before F&M and CTF entered into a commission agreement for the haulage of freight. This Court also finds the payments and benefits provided to Ms. [Judith] Christenberry after 2000 was in no way an attempt to divert corporate assets to the detriment of a creditor since the payments and cost of benefits were reflected as alimony paid from Mr. Christenberry's salary and personal resources, which were duly noted upon the books of the corporation. This Court found no evidence of any attempts to divert corporate assets to the detriment of creditors presented at trial. Therefore, the Court finds these facts weigh[] in favor of CTF in not allowing the piercing of the corporate veil.

At trial and on appeal, F&M's primary argument is that the payments from CTF to Judith Christenberry demonstrate an improper transfer of corporate assets to a third party, made to the detriment of creditors. Much evidence was presented and heard by the trial court about these payments, which were made under the terms of the marital dissolution agreement (MDA) executed in 1995 by Mr. Christenberry and his ex-wife Judith Christenberry. The MDA was approved and incorporated into the final judgment for divorce entered by the Blount County General Sessions Court on August 8, 1995.

The divorce ended a marriage of approximately 36 years. CTF was incorporated in 1989, and by all accounts it was quite successful and prosperous during the 1990s. Judith Christenberry worked for CTF, which she described as a family company, while she was married. She testified that her divorce attorney counseled her that she was entitled to one-half the value of CTF, and got upset with her because she didn't want to hurt the corporation by demanding one-half of it:

---

³ The trial court's order refers to Mr. Christenberry's ex-wife as "Janie" Christenberry throughout this paragraph. It is obvious from the record that this is a typographical error; her name is Judith Christenberry.

11

Q: And [your divorce lawyer] was upset with you, wasn't she?

A: Yes.

Q: Why was she upset with you?

A: Because as the saying goes, I wasn't taking him to the cleaners because I owned half of it.

Q: Half of the company?

A: Half of the company and half of everything.

Q: And she wanted you to take that company, didn't she?

A: Yes, she did.

Q: What would have happened had you been allocated fifty percent of that company, what would have happened to it?

A: It would have destroyed it. It would have destroyed [Mr. Christenberry], my son, and me.

Q: It was a family business, wasn't it?

A: Yes, it's always been family. We worked too hard.

The MDA executed by the Christenberrys and approved by the trial court provides as follows:

> INCOME: (a) HUSBAND shall pay to WIFE the sum of Fifty-Five Thousand Dollars ($55,000.00) per year . . . (hereinafter referred to as Income). Said Income may be derived as a salary from Christenberry Trucking and Farm Inc. (hereinafter COMPANY) or any successor business or entity; as payment via an annuity; or otherwise, at the election of HUSBAND and WIFE. This Income shall continue to flow to WIFE from HUSBAND in the event of a sale or failure of the Company. This Income shall continue throughout the life of WIFE, and HUSBAND acknowledges

12

> same as a debt against his estate should he predecease WIFE.
> . . . It is further agreed that this income is deemed to be
> periodic alimony and a matter of support between the parties,
> but shall not abate should the WIFE decide to remarry.

(Underlining and capitalization in original.)

Judith Christenberry continued to be employed by CTF as a W-2 employee from 1995 until 2000. She was paid a salary of $55,000 per year. She testified that she came in to work to help out as needed, but it is clear from her testimony that she did not keep regular hours there. However, she also testified that through her efforts and work for CTF, she assisted the company in its discovery of embezzlement by two of its employees, one of whom embezzled around $500,000, and the other, already mentioned, almost $200,000. So it is not in serious dispute that Judith Christenberry substantively contributed to CTF's financial well-being during the five post-divorce years she was employed there.

In 2000, Judith Christenberry was seriously injured in an accident and went on disability. At that point, CTF no longer paid her a salary. The $55,000 per year agreed income under the MDA was thereafter paid by Mr. Christenberry as alimony. CTF increased Mr. Christenberry's salary by a commensurate amount. As the trial court correctly noted, this was about four years before CTF contracted with F&M. The trial court concluded that the payments to Judith Christenberry did not evince an attempt by CTF to divert corporate assets to the detriment of creditors. The evidence does not preponderate against this conclusion. The testimony and other proof suggests that the arrangement set forth in the MDA was an attempt to provide Ms. Christenberry compensation for her interest in the family corporation, without damaging or destroying it in the process. As noted, she provided valuable service to CTF during her time as an employee after the divorce. Furthermore, when she was injured and no longer able to work for CTF, it stopped employing her and Mr. Christenberry personally paid her alimony.

In summary, the Supreme Court has cautioned that "*in all events, the equities must substantially favor* the party requesting relief" of piercing the corporate veil, and that "the presumption of the corporation's separate identity should be set aside only with great caution and not precipitately." *Rogers*, 367 S.W.3d at 215 (emphasis added). This "is a matter particularly within the province of the trial court," *id.*, which weighed the equities in this case, as have we on review. We agree that the equities here do not substantially favor the result of piercing CTF's corporate veil and holding Mr. Christenberry personally liable for its debt. The evidence does not preponderate against the trial court's factual findings supporting its judgment in this case.

13

## V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, F&M Marketing Services, Inc. The case is remanded for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE