IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 9, 2023 Session

## BARON CONSTRUCTION, LLC v. 4J CONSTRUCTION COMPANY, INC. ET AL.

**Appeal from the Chancery Court for Davidson County**
No. 16-1286-II    Anne C. Martin, Chancellor

_____

**No. M2022-00412-COA-R3-CV**
_____

A general contractor sued two business entities and their sole owner for breach of contract. The defendants denied liability and filed a counter-complaint. Four years later, the contractor moved for sanctions under Tennessee Rule of Civil Procedure 16.06. The trial court entered a default judgment against the defendants and dismissed their counterclaims with prejudice due to their repeated failure to comply with pretrial orders. The defendants moved to set aside the final judgment. The trial court granted the owner relief from the judgment. But it refused to set aside the judgment against his two companies. And it granted the contractor summary judgment against the owner on the remaining claims. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

J. Noble Grant, III, Jackson, Tennessee, for the appellants, 4J Construction Company, Inc., Push 4J Construction Company, LLC, and LaFayette Johnson.

J. Ross Hutchison, Nashville, Tennessee, for the appellee, Baron Construction, LLC.

## OPINION

### I.

#### A.

The Sumner County government chose Baron Construction, LLC to oversee construction of an emergency operations building. Baron Construction, in turn, subcontracted with 4J Construction Company, Inc. for a portion of the work. Dissatisfied with 4J Construction's performance, Baron Construction eventually terminated the subcontract.

In 2016, Baron Construction sued 4J Construction for breach of contract. The complaint also named Push 4J Construction Company, LLC and LaFayette Johnson as defendants. According to the complaint, both companies performed work under the subcontract, and Mr. Johnson was their sole owner. Baron Construction alleged that all three defendants were jointly and severally liable for breach of the subcontract.

After the defendants retained counsel, the parties agreed to extend the deadline for filing a responsive pleading until May 2017. But in early June 2017, defense counsel moved to withdraw. The court granted the withdrawal and gave Mr. Johnson thirty days to secure new counsel. Shortly after that deadline passed, Mr. Johnson requested an extension as he was "having a little difficulty securing the necessary retainer." The court granted his request.

New counsel entered an appearance about a month later and filed an answer generally denying liability. In a counter-complaint, the defendants alleged that Baron Construction owed them compensatory and punitive damages for breach of contract and racial discrimination. According to the defendants, 4J Construction met its contractual obligations, but Baron Construction failed to pay for the work. And the termination was racially-motivated. 4J Construction was a minority enterprise. Baron Construction replaced it with a non-minority subcontractor who submitted a lower bid. Allegedly, the general contractor had engaged in similar conduct on other projects.

Discovery ensued. When the defendants failed to disclose the factual basis for their racial discrimination claim, Baron Construction filed a motion for Rule 11 sanctions. *See* TENN. R. CIV. P. 11. The defendants asserted that sanctions were unwarranted because they expected the evidence to develop through further discovery. The court denied the motion. Still, it admonished the defendants for their inadequate responses. And it alerted them it would take their conduct into consideration if presented with a future motion for sanctions.

A short time later, the defendants' second attorney moved to withdraw. The court granted the motion and gave Mr. Johnson forty-five days to secure a replacement. A week before the court's deadline, Mr. Johnson requested more time. The court extended the deadline for another month and informed Mr. Johnson that it would not grant another extension. Yet, the day before the deadline expired, Mr. Johnson requested "a little more time." He had reached a tentative agreement with new counsel, but he was "having a little difficulty securing the necessary retainer."

2

Frustrated with the delay, Baron Construction moved for sanctions under Tennessee Rule of Civil Procedure 16.06. It asked the court to enter a default judgment in its favor and strike the defendants' counterclaims based on their repeated failure to comply with pretrial orders.

The court postponed the motion for sanctions. Because Mr. Johnson indicated that he had partially secured new counsel, it granted him an additional thirty days to finalize the arrangement. But it warned him that this deadline was final.

On the day the deadline was set to expire, Mr. Johnson filed an expedited motion seeking even more time. The partial arrangement had fallen apart. And he needed more time to secure new counsel. As promised, the court denied his request. The case had been on hold for five months. It would proceed with Mr. Johnson as a pro se litigant. A jury trial was set for August 2020.[1]

In January 2020, the court held a hearing on the postponed motion for Rule 16.06 sanctions. None of the defendants filed a written response. But Mr. Johnson attended the hearing. The court found that the corporate defendants' failure to pursue their counterclaims had unduly prejudiced the opposing party. The case had been pending for four years. The defendants' counsel had withdrawn two times. In the court's view, "continuing to push this matter out into the future without holding the [counterplaintiffs] accountable d[id] not serve the goals of judicial economy." The companies had failed to appropriately participate in the litigation, either to defend themselves or to pursue their counterclaims. So the court dismissed their counterclaims and awarded judgment against them on liability. The claims involving Mr. Johnson individually remained pending.

Almost two months later, new defense counsel appeared and moved to set aside the partial default judgment. *See* TENN. R. CIV. P. 54.02. The defendants argued that their failure to secure counsel by the court's deadline was not willful. In an affidavit, Mr. Johnson attested to his diligent search for an attorney and his inability to raise sufficient funds at an earlier date. The defendants maintained that reinstatement of their claims would not be prejudicial because the case was still ongoing. And they had asserted a meritorious defense in their answer and counter-complaint.

The court set aside the interlocutory judgment. Given the liberal standard of review, the court could not find that the defendants had acted willfully. And the prejudice to Baron Construction was limited. Yet the court admonished the defendants that "any future failure to actively participate in [the] proceedings and adhere to the Tennessee Rules of Civil

---

[1] The defendants demanded a jury.

Procedure and this Court's orders w[ould] result in a reinstatement of the default judgment." By agreement, trial was postponed until February 2021.

Three months later, the defendants' third attorney moved to withdraw, citing a breakdown in client communication and a failure to abide by contractual obligations. Despite having notice, Mr. Johnson failed to appear at the withdrawal hearing. In his absence, Baron Construction asked the court to dismiss the defendants' claims based on the pattern of disregard for the proceedings.

The court allowed defense counsel to withdraw. And it declined to impose new sanctions at that time. In a written order sent to Mr. Johnson's address, the court informed Mr. Johnson that he had thirty days to obtain new counsel for his companies. Otherwise, the court would reinstate the previous sanctions. This was the third defense counsel to withdraw. The fact that the latest attorney only lasted four months indicated to the court that the defendants were not engaging in the litigation in a good faith manner. The court also advised Mr. Johnson that if he failed to cooperate in discovery or otherwise adhere to his obligations to the court and the litigation process, the court would consider imposing identical sanctions against him individually.

The court's deadline passed without the appearance of new defense counsel or any word from Mr. Johnson. Baron Construction filed another motion for Rule 16.06 sanctions. *See* TENN. R. CIV. P. 16.06. Once again, none of the defendants filed a written response.

This time the court granted the motion. Mr. Johnson failed to file a timely written response to the motion as required by the local rules of practice. So the court was authorized to grant the motion without a hearing. *See* 20TH JUD. DIST. LOC. R. § 26.04 (providing that "if no response is timely filed and personally served, the motion shall be granted [. . .]"). Sanctions were also appropriate under the Tennessee Rules of Civil Procedure. *See* TENN. R. CIV. P. 16.06. The defendants failed to comply with the court's order despite explicit warnings. They had not notified the court of an intention to move forward with the litigation. No new counsel had made an appearance on their behalf. And Baron Construction had been unduly prejudiced by the defendants' conduct. So the court entered a default judgment on liability against all defendants and dismissed their counterclaims with prejudice.

The court held an evidentiary hearing on damages. Mr. Johnson appeared to defend against Baron Construction's damages claims. While he denied being responsible for the claimed expenses, he did not produce any evidence to contradict the general contractor's claims. And on October 27, 2020, the court entered a judgment against all three defendants, jointly and severally, for $696,732.66.[2]

---

[2] The award included $505,694.64 in damages for breach of contract, $93,085.66 in attorney's fees and costs, and $97,952.36 in prejudgment interest.

Thirty-three days later, new counsel entered an appearance on behalf of the defendants. That same day, the defendants moved to set aside the default judgment and dismissal order. They argued that the court lacked a sufficient basis for imposing sanctions on Mr. Johnson. The court never set a deadline for Mr. Johnson to secure individual counsel. He was entitled to proceed as a pro se litigant. And they insisted that the court's entry of sanctions against the two company defendants was premature. They could have secured new counsel in time to prepare for trial as scheduled.

The court granted the motion in part. It noted that Mr. Johnson had not participated consistently in the litigation. But it was reasonable for him to assume that he could proceed pro se. And default and dismissal were severe penalties for his failure to file a timely written response. So the court vacated the sanctions imposed on Mr. Johnson.

But the court refused to grant relief to the two company defendants. They had been warned on August 5 to secure counsel within thirty days or the court would impose sanctions. As of October 2, 2020, they had failed to secure counsel. They had repeatedly failed to adhere to the court's orders. Their conduct throughout the litigation evidenced a disregard for the process and an unwillingness to proceed. The court was authorized to impose sanctions under these circumstances. And the companies did not establish a basis for the court to set the judgment.

## B.

Baron Construction then filed a motion for summary judgment on all remaining claims. Specifically, it sought an order imposing personal liability on Mr. Johnson for the conduct of his two companies and a judgment in its favor on his racial discrimination counterclaim.

Based on the undisputed facts, the court determined that 4J Construction and Push 4J Construction were mere instrumentalities for Mr. Johnson and it would be unjust to allow him to use his companies as a shield against liability. The court also agreed that Mr. Johnson lacked sufficient evidence to establish his counterclaim. So the court concluded that Baron Construction was entitled to entry of a judgment in its favor as a matter of law.

## II.

The defendants contend that the court abused its discretion when it imposed the second set of sanctions and when it refused to grant the company defendants relief from the judgment. They also challenge the court's decision to pierce the corporate veil.

5

We review a trial court's decision to impose sanctions and its decision on a motion to set aside a judgment for an abuse of discretion. *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012); *McInturff v. Neeseman*, 986 S.W.2d 11, 12 (Tenn. Ct. App. 1998). Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Resp.*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Instead, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* So we uphold the trial court's ruling as "long as reasonable minds can disagree as to [the] propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

A trial court's decision on a motion for summary judgment presents a question of law, which has no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

A.

Trial courts have the authority to impose appropriate sanctions on a party that fails to obey a pretrial order. TENN. R. CIV. P. 16.06. Among other things, the court may dismiss the action or render a judgment by default against the disobedient party. TENN. R. CIV. P. 37.02(C); *see also* TENN. R. CIV. P. 41.02(1).

The defendants concede that Mr. Johnson's companies violated the August 5, 2020 pretrial order to secure replacement counsel. But they complain that the court imposed too harsh a sanction under the circumstances.[3] We disagree. "[A] clear record of delay or contumacious conduct" is enough to justify dismissal. *Shahrdar v. Glob. Hous., Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998). The court found that the defendants were not engaging in the litigation in good faith. The case had been pending for four years. There were multiple lengthy delays due to the withdrawal of defense counsel. The court repeatedly reminded Mr. Johnson that his companies could not participate in the litigation

---

[3] The defendants also contend that the court erred in granting the sanctions motion based on the violation of a local rule. *See* 20TH JUD. DIST. LOC. R. § 26. As they point out, local rules of practice that conflict with the Tennessee Rules of Civil Procedure are invalid. *See Smalling v. Smalling*, No. E2013-01393-COA-R10-CV, 2014 WL 285682, at *3 (Tenn. Ct. App. Jan. 24, 2014); TENN. R. S. CT. 18(c). But we see no conflict here. The absence of a similar rule in the Tennessee Rules of Civil Procedure does not create a conflict.

without representation. *See Old Hickory Eng'g & Mach. Co. v. Henry*, 937 S.W.2d 782, 786 (Tenn. 1996) ("[A] corporation cannot act *pro se* in a court proceeding nor can it be represented by an officer or other non-lawyer agent."). Yet he failed to maintain counsel for his companies. In March 2020, Mr. Johnson assured the court that he intended "to diligently pursue the claims of [his] companies . . . and . . . take any necessary steps to ensure that the[ir] rights [we]re vindicated." But his actions belied his words. Four months later, his third attorney moved to withdraw due to a breakdown in communication and the clients' failure to comply with contractual obligations. Mr. Johnson did not appear at the withdrawal hearing. And despite the court's explicit warnings, he failed to secure replacement counsel for his companies in a timely fashion.

The defendants contend that the court's decision was premature. Four months remained until the scheduled trial. And they could have secured new counsel without causing further delay. But we cannot fault the court for acting. The defendants did not respond to the sanctions motion or request additional time to secure counsel. It took Mr. Johnson six months to secure counsel after the last withdrawal. On this record, the court had no reason to presume that this time would be any different.

We discern no abuse of discretion in the trial court's decision to impose these sanctions. A "trial judge [is] in the best position to determine whether [a party's] actions and inactions throughout the proceedings support[ ] an order to dismiss [the case]." *Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 359 (Tenn. Ct. App. 2009). The court applied the correct law, the record supported its decision, and its decision was within the range of acceptable alternatives.

B.

When the defendants moved to set aside the second set of sanctions, they sought relief from a final judgment.[4] Relief sought more than thirty days after entry of a final judgment must be pursued under Tennessee Rule of Civil Procedure 60.02(1). *Discover Bank*, 363 S.W.3d at 489.

The defendants sought relief from a final judgment based on "excusable neglect." So, as a threshold issue, we must decide "whether the conduct precipitating the default was willful." *Id.* at 494; *Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003). Willful conduct includes both "deliberate choices" and "conduct that is flagrant and unexplained."

---

[4] Finality may be achieved through a series of orders. On October 2, 2020, the court entered a default judgment against all defendants on the claims raised in the complaint. It also dismissed the defendants' counterclaims with prejudice. And on October 27, 2020, the court entered a final judgment resolving Baron Construction's damages claims. At that point, the court had resolved all of the parties' claims. There was nothing left for the court to adjudicate. *See Ball v. McDowell*, 288 S.W.3d 833, 836-37 (Tenn. 2009).

7

*Discover Bank*, 363 S.W.3d at 493 (first quoting *Barber & McMurry, Inc. v. Top-Flite Dev. Corp.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986); and then quoting *Hayes v. Hayes*, No. M2006-02356-COA-R3-CV, 2007 WL 2580026, at \*2 (Tenn. Ct. App. Sept. 6, 2007)). If the conduct of the defaulting party is willful, "the judgment cannot be set aside on 'excusable neglect' grounds." *Id.* at 494.

The defendants contend that financial issues prevented them from complying with the court's directives. The court did not find their conduct willful when it set aside the earlier sanction. But circumstances had changed. After the third request to withdraw, the court found that the defendants were not acting in good faith. Despite Mr. Johnson's assurances, he failed to maintain representation for his companies. The third defense counsel had moved to withdraw because of a breakdown in communication and the clients' failure to comply with contractual obligations. And that representation had lasted only four months. The court warned Mr. Johnson in August that it would re-impose sanctions if he failed to secure counsel as directed. Yet he did not comply. Nor did he communicate with the court. He never requested an extension of time. He did not respond to the motion for sanctions. Unspecified financial troubles, real or not, were not an adequate explanation for this conduct.

The trial court did not abuse its discretion in denying the company defendants relief from the default judgment and dismissal order. These defendants failed to prove that they were entitled to relief on excusable neglect grounds.

C.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.*

"[W]hether to disregard the corporate fiction depends on the special circumstances of each case." *Oceanics Schs., Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003). The decision is generally not suitable for summary judgment. *Mike v. Po Grp., Inc.*, 937 S.W.2d 790, 795 (Tenn. 1996). But here the facts are largely undisputed. Mr. Johnson does not claim otherwise. Instead, he argues that summary judgment was inappropriate because Baron Construction failed to show that he used the corporate form to perpetuate a fraud or injustice. *See Pamperin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 438 (Tenn. Ct. App. 2008).

8

A corporation's separate legal status "may be disregarded upon a showing that it is a sham or a dummy or where necessary to accomplish justice." *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991). Our courts consider a series of factors when determining whether to pierce the corporate veil. *See CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88-89 (Tenn. 2010) (citing *Fed. Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984)). No one factor is decisive. *Id.* But, as a whole, the equities must substantially favor the party seeking to pierce the corporate veil. *Id.*

Mr. Johnson was the sole owner of both 4J Construction and Push 4J Construction. He operated the companies without other officers. No stock certificates were ever issued for either company. The companies occupied the same principal place of business, an office building owned by Mr. Johnson. Yet they did not have a lease agreement or pay any rent. During this project, they shared one full-time employee, a secretary. Mr. Johnson treated his companies as "one and the same." When Baron Construction requested documentation for the project, Mr. Johnson provided documents in his own name or in the name of Push 4J Construction, not 4J Construction. As Mr. Johnson points out, these facts alone "are insufficient to justify piercing the corporate veil." *Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 831 (Tenn. Ct. App. 2012). Mr. Johnson had the right to control his businesses "so long as [he] [did] not use the control to defraud [others]." *Pamperin*, 276 S.W.3d at 439.

Baron Construction demonstrated that 4J Construction was grossly undercapitalized on this project. This was a "pay when paid" contract. But 4J Construction was not an active business. Because 4J Construction "had a credit problem," Mr. Johnson ordered the materials for the project through his other company. No invoices or payments were exchanged between the companies. They did not have a contractual relationship. 4J Construction also lacked sufficient funds to pay its suppliers on the project. Baron Construction ultimately stepped in and began paying those bills directly. At some point, 4J Construction dissolved and ceased operations.

Mr. Johnson also commingled personal and corporate funds without maintaining proper documentation. Baron Construction paid 4J Construction a $30,000 mobilization fee. Instead of depositing the fee into 4J Construction's bank account, Mr. Johnson placed the funds in his own personal account. He claimed that this was repayment for a $50,000 loan he made to the company at the beginning of the project. But he had no loan documentation or any records of how 4J Construction used the loan proceeds. He also cashed Baron Construction's other payments to 4J Construction rather than depositing the funds in the corporate account. And he paid his company's laborers through his personal account rather than the corporation's account. Again, there were no corporate records reflecting this activity.

9

Like the trial court, we conclude that these facts show that "the corporate entity was a mere instrumentality for [Mr.] Johnson and it would be an injustice to allow [him] to use the corporate entity as a shield to thwart the satisfaction of the judgment obtained in this case." Mr. Johnson "disregarded the corporate form by commingling assets and failing to maintain corporate records." He viewed his companies as interchangeable. And he treated corporate assets as his own. 4J Construction lacked sufficient capital to pay its suppliers and laborers on the project. None of Baron Construction's payments to 4J Construction were deposited into the corporate account. They were either deposited into Mr. Johnson's personal account or cashed. And there were no corporate records reflecting any of this activity.

Baron Construction demonstrated that it was entitled to a judgment as a matter of law. The only reasonable conclusion to be drawn from the undisputed facts is that the separate legal status of 4J Construction should be disregarded.

### III.

The court did not abuse its discretion when it imposed the second set of sanctions or when it declined to grant the company defendants relief from the judgment. And Baron Construction was entitled to a judgment as a matter of law on its request to pierce the corporate veil. So we affirm the trial court's decision.

_s/ W. Neal McBrayer_
W. NEAL MCBRAYER, JUDGE